# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CARMEN LOCKHART,
Plaintiff

vs

Case No. 1:07-cv-837
(Beckwith, J.; Hogan, M.J.)

COMMISSIONER OF
SOCIAL SECURITY,
Defendant

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 10), the Commissioner's Memorandum in Opposition (Doc. 13), and plaintiff's Reply Memorandum. (Doc. 15).

## PROCEDURAL BACKGROUND

Plaintiff, Carmen Lockhart, was born on July 16, 1949, and was 57 years old at the time of the ALJ's decision. Plaintiff has a high school education and training as a C.N.A. (Certified Nursing Assistant). Plaintiff has past work experience as a nurse's assistant and cashier. Plaintiff filed her applications for DIB and SSI on April 9, 2004, alleging disability due to cataracts, neck and back pain and depression. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff requested and was granted a de novo hearing before an ALJ. On August 8, 2006, plaintiff, who was represented by counsel, appeared and testified at a hearing before ALJ Samuel A. Rodner.

On December 15, 2006, the ALJ issued a decision denying plaintiff's DIB and SSI applications. The ALJ determined that plaintiff worked from April 2004 to August 2006, and that she earned an average of $987 per month in 2005 or above the presumptive level of substantial gainful activity. (Tr. 25 ¶ 2). Plaintiff's work activity throughout 2005 constituted substantial gainful activity within the meaning of the regulations. *Id.* ¶ 4. The ALJ further found that from the amended alleged onset date of April 8, 2004 to the date of the hearing on August 8, 2006, the plaintiff did not go 12 months at any time without performing substantial gainful activity. This resulted in a denial at Step One of the sequential evaluation process. *Id.* ¶ 5. In the alternative, the ALJ determined that Plaintiff has severe impairments consisting of right eye blindness, neck and low back pain, and depression, but that such impairment does not alone or in combination with any other impairment meet or equal the level of severity described in the Listing of Impairments. *Id.* 6. The ALJ determined that plaintiff's allegations of total disability were not credible. *Id.* ¶ 7. According to the ALJ, plaintiff retained the residual functional capacity (RFC) for medium work, but because of her right eye blindness, she lacked depth perception and should avoid all exposure to working around hazardous machinery, unprotected heights, and should avoid driving commercially. Mentally, the claimant was limited to one and two step instructions, routine and repetitive tasks, and jobs without a constantly rapid pace. *Id.* ¶ 8. The ALJ determined that plaintiff was able to perform her past relevant work as a cashier. *Id.* ¶¶ 9, 10. Consequently, the ALJ concluded that plaintiff was not disabled under the Act.

Plaintiff requested review by the Appeals Council. The Appeals Council denied plaintiff's request for review, making the decision of the ALJ the final administrative decision of the Commissioner.

## MEDICAL RECORD

The Plaintiff's medical record began with an ophthamological consultative examination performed on May 11, 2004 by Dr. J.B. Gillen. Dr. Gillen noted that when plaintiff lost visual acuity in her right eye, she did not seek medical prescription. Dr. Gillen was unable to scope the right eye. Examination revealed a normal left eye and a completely opaque cataract in her right eye. Dr. Gillen diagnosed Plaintiff with right eye cataract, needing surgery, and no pupil defect. Dr. Gillen added that Plaintiff is not statutorily blind, but has decreased depth perception, and she should be restricted from heights and operating machinery. (Tr. 134-137).

On June 5, 2004, Cindi Lynn Hill, M.D., a state agency reviewing physician, opined that Plaintiff had no exertional limitations, but she should never climb ladders, ropes or scaffolds. Plaintiff had visual limitations in her right eye, limited depth perception, and should avoid exposure to hazardous machinery, heights, and commercial driving. Dr. Hill noted that Plaintiff was not blind and has not sought medical care. (Tr. 138-43). Jerda Riley, M.D., another state agency physician, affirmed this assessment in January 2005. (Tr. 165-67).

On June 15, 2004, Plaintiff was seen at the Cincinnati Eye Institute for evaluation of deceased visual acuity in right eye. She was diagnosed with dense white cataract and scheduled for cataract surgery. On July 20, 2004, plaintiff failed to show for pre-op. appointment and when called by the doctor's office, stated she did not have her medical card. (Tr. 192-96).

Paul A. Deardorff, Ph.D., performed a psychological evaluation at the request of the state agency on July 25, 2004. Plaintiff told Dr. Deardorff that she had applied for disability benefits because of right eye blindness due to cataracts. Plaintiff also stated that she did not hear well and was depressed. Plaintiff reported that she lived alone, and worked as a nurse's aid in a nursing home

3

one-to-two days a week. She said that she held this position since 1996, worked steadily and was never terminated.

Besides working part-time, Plaintiff's activities included sleeping, watching television, and caring for her pet. Plaintiff said her son did her household chores and that she had few friends who she did not often see often. Plaintiff said that she used Effexor but had no history of involvement with the mental health system. Plaintiff stated that she was easily angered, but had encountered no difficulty due to anger control problems. Plaintiff told Dr. Deardorff that she had been arrested for "Disorderly Conduct" and "something else" which she could not recall. She denied having drug or alcohol-related difficulties. On mental status examination, Plaintiff had adequate grooming and hygiene, displayed no loose associations nor flight of ideas, was adequately organized and easily followed conversation. Plaintiff appeared depressed and anxious and fidgeted and cried during the evaluation, but maintained adequate eye contact and denied having suicidal ideation or attempts. Plaintiff was preoccupied with her difficulties, but displayed no indications of obsessions, compulsions, delusions or hallucinations. Dr. Deardorff thought Plaintiff's complaints of limited energy and fatigue could be indicative of somatization. Plaintiff was alert, oriented, not confused, and lacked no awareness of her past or present situation. Her remote recall was adequate, but her short-term memory and attention and concentration were weak, and her reasoning abilities were not strong. Plaintiff's general level of intelligence appeared to fall in the low-average range. Dr. Deardorff believed Plaintiff had sufficient judgment to make decisions and conduct her living arrangements efficiently. Plaintiff was diagnosed with a major depressive disorder, recurrent, without psychotic features, occupational problems, problems interacting with social environment and she was assigned a Global Assessment of Functioning score of 51. Dr. Deardorff opined that

Plaintiff was moderately impaired in her work-related mental abilities, including her ability to relate to others, understand, remember, and follow simple instructions, maintain attention, concentration, persistence and pace. Plaintiff would very likely have difficulty relating to others and completing simple repetitive tasks. Dr. Deardorff further opined that Plaintiff's ability to withstand stress and pressures associated with day-to-day work activities were moderately to seriously impaired by emotional difficulties. Dr. Deardorff stated that stress may increase Plaintiff's anxiety and decrease her attention and concentration. Work stress may also increase depressive symptomology such as crying, withdrawing, and slowing work performance. (Tr. 144-48).

In August 2004, J. Rod Coffman, Ph.D., a state agency reviewing psychologist, opined that Plaintiff had minimal impairment in her ability to interact and relate to others and noted that she was currently working part-time. Dr. Coffman further opined that Plaintiff's ability to maintain attention, concentration, persistence and pace and to withstand stress and pressure associated with day-today work activities were moderately impaired, but that she could understand and remember simple instructions. (Tr. 149-64). Dr. Coffman's assessment was affirmed by two other state agency psychologists in December 2004 and January 2005. (Tr. 149, 164, 168-71).

In January 2005, Plaintiff was seen at the Christ Hospital emergency room for low back pain. Plaintiff stated that she was bending over at work when she felt a pulling sensation. Plaintiff also stated that she had intermittent problems with back pain for the past 10 years, but had not had difficulty in the last year or more. Plaintiff denied having any medical conditions or taking medication. Plaintiff smelled of alcohol and admitted to daily alcohol use and the consumption of 40 ounces of beer per day. She also said that she went through withdrawal with shakes if she did not drink daily. Plaintiff admitted to drinking two 12 ounce beers prior to arriving at the emergency

5

room. On examination, Plaintiff had 5/5 strength in her upper and lower extremities, normal gait, intact sensation, and bilateral and equal deep tendon reflexes. Plaintiff was diagnosed with acute musculoskeletal low back pain and alcohol abuse and discharged with medication. Plaintiff was told not to lift more than five pounds for two weeks and to schedule an appointment with her primary physician. (Tr. 198-201).

On February 21, 2005, Plaintiff saw Ausberto Orejuela, M.D., a family practitioner. Plaintiff noted her recent emergency room visit and complained of lower back pain, depression and she also reported that she had been having crying spells. Dr. Orejuela prescribed Zoloft and Celebrex. (Tr. 173).

On May 31, 2005, Plaintiff was seen at The University Hospital emergency room. She had a positive PPD and was concerned that she had been exposed to "TB" and her employer required a chest x-ray before she returned to work. She also complained about arm pain and soreness after lifting several heavy boxes. On physical examination, Plaintiff had slight decreased range of motion of the left shoulder, no tenderness to palpation, and 5/5 strength in bilateral upper extremities. The chest x-ray was negative. Plaintiff was discharged with Naprosyn. (Tr. 175-78).

On November 20, 2005, Plaintiff was seen in the emergency room at The University Hospital following a motor vehicle accident, and complained of headaches and neck and back pain. (Tr. 180-84). A CT scan and x-rays of the cervical spine demonstrated degenerative changes at C5 through C6 but no acute fracture or malalignment. (Tr. 182-83).

On December 12, 2005, Plaintiff went to the emergency room complaining of headaches and requesting a note to return to work. Plaintiff said that when she was discharged from the emergency room after a car accident, she was given five days off from work with lifting restrictions. She said

that she worked as a patient care aide and needed a doctor's note, stating that she could lift in order to return to work lifting patients. According to the emergency room physician, this was "more important" to Plaintiff than medications for her headache. On physical examination, Plaintiff had some paraspinal tenderness in her cervical spine, but had full range of motion of all extremities, no cyanosis, clubbing or edema, 5/5 strength in her upper and lower extremities, normal gait, and no neurological deficits. Plaintiff was prescribed medication and given a note indicating that she could return to work and was able to lift. (Tr. 185-87)

Plaintiff returned to the emergency room for complaints of low back pain on January 18, 2006. Examination revealed mild diffuse muscular tenderness of the back; equal deep tendon reflexes in both knees and ankles, steady gait, good strength and sensation throughout her legs, and no neurological deficits. Lumbar x-rays demonstrated multilevel degenerative arthrosis and lumbar spondylosis. Plaintiff was diagnosed with back pain which appeared to be musculoskeletal in nature. Plaintiff was told not to perform any heavy lifting for the next week, prescribed medication and was told to seek primary care for her current symptoms. (Tr. 188-89).

Plaintiff sought treatment at the University Hospital for complaints of poor vision in April of 2006. The vision tests revealed V-20/60 P.H. DNI H 20/200. (Tr. 204). On June 26, 2006, she was diagnosed with mature cataract right eye with itching and running water from the eye. (Tr. 206).

## PLAINTIFF'S TESTIMONY AT THE HEARING

At the time of the hearing, Plaintiff worked part-time for 20 to 24 hours a week as a C.N.A. She worked through an agency at nursing homes. She had been working as a C.N.A. for 9 or 10 years. Plaintiff said that she had to move and lift patients and could not work 12 hour shifts every day because she needed to take a break due to pain and depression. When asked by the ALJ why she

7

picked her initial onset date of disability as January 1, 2004, she could not remember. After discussing with counsel, Plaintiff amended her alleged onset date to April 8, 2004, around the time she lost vision in her right eye. Plaintiff had not had the cataract removed because she could not afford the surgery. She further testified that she could not see out of her right eye and had trouble seeing small writing.

Plaintiff could not remember details about her work history. Plaintiff testified that the amount of time she worked depended on the availability of work through the agency, or if she felt like going outside or she wanted to stay in the house and not be bothered. (Tr. 237-38).

Plaintiff further testified that she had back pain, and when her back went out, she went to the emergency room. She was given muscle relaxers and pain medication. Plaintiff did not require the use of ambulatory aids. Plaintiff testified that she previously took Zoloft for depression but could no longer afford it. Plaintiff stated that she did not drink alcohol frequently and had one beer on the weekend. Plaintiff testified that it had been more than seven or eight months since she drank every day.

As to her daily activities, Plaintiff testified that she swept, did laundry, mopped, cooked, rode the bus, grocery shopped, went to church, watched television, played with her dogs, and had contact with relatives and friends. Plaintiff stated that she could lift about 40 pounds, sit for a couple of hours at a time, and stand for one and one-half hours. (Tr. 230-57).

### THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The ALJ's hypothetical question to the vocational expert (VE) assumed an individual who has the residual functional capacity to perform work at the medium level, had right eye blindness and depth perception problems, should avoid hazardous machinery, unprotected heights, and commercial

8

driving, and could never use ladders, ropes, scaffolds. The individual could understand and remember simple instructions, and perform routine repetitive tasks. The VE responded that the Plaintiff could perform her past relevant work as a cashier. Plaintiff could not perform her past relevant work as a CNA because it was performed at the heavy level, requiring her to lift over 50 pounds.

The ALJ gave the VE a second hypothetical based on Dr. Deardorff's assessment and combined with Plaintiff's testimony, the VE responded that based on the level of pain to which Plaintiff testified, he believed it would preclude work activity on a constant basis. (Tr. 257-59).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(1), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be

expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(I)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Similarly, to qualify for SSI benefits, plaintiff must likewise file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months and plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the

Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980).

To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky, 35* F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir, 1985)(citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

The Social Security Act provides that an individual who is working and engaged in substantial gainful activity is not entitled to disability benefits. 42 U.S.C. § 423(f). The regulations under the Act establish a series of hurdles that an applicant must surmount before establishing eligibility for benefits. The first step is a determination whether the claimant is engaged in substantial gainful activity. If she is, her claim is rejected without consideration of her medical condition. 20 C.F.R. §§ 416.920(a),(b). "Substantial work activity" is defined in the regulations as work that "involves doing significant physical or mental activities" and "is the kind of work usually done for pay or profit." 20 C.F.R. §§ 416.972(a),(b).

## OPINION

Plaintiff raises several assignments of error in this case. First, she argues that the ALJ erred at Step One of the sequential evaluation process in determining her trial work period. Plaintiff contends that she had unsuccessful work attempts (UWA) since filing for SSI, and that her income was below the presumptive Substantial Gainful Activity (SGA) level. Plaintiff further argues that the ALJ failed to fully develop the record regarding a trial work period. Second, plaintiff contends that the ALJ erred in determining her RFC. Plaintiff alleges that the ALJ erred in his evaluation of the medical

opinions, specifically by failing to rely on the opinion of examining psychologist, Dr. Deardorff. Plaintiff further argues that the ALJ improperly assumed that plaintiff had an alcohol problem which contributed to her impairments. Finally, Plaintiff contends the ALJ erred in evaluating her credibility.

The ALJ denied plaintiff's claim in this case at Step One of the Commissioner's sequential evaluation process. 20 C.F.R. § 404.1520. The burden of proof is on the plaintiff at this step to demonstrate that she did not engage in substantial gainful activity during the period in question. *Bell v. Commissioner of Social Sec.*, 105 F.3d 244, 246 (6th Cir. 1996); *see also Field v. Chater*, 920 F. Supp. 240, 241 (D. Me. 1995).

The administrative law judge found that the plaintiff's average monthly earnings for the relevant years were as follows:

> ...the analysis of whether or not the claimant has performed substantial gainful activity after April 8, 2004 is based solely on her earnings records. The records relied on regarding the issue of substantial gainful activity after the alleged onset date are records provided by the claimant and the usual F.I.C.A. earnings records (Exhibits 2D-5D). The records show that the claimant worked from April 2004 to the end of 2004 for K&C Providers Inc. (Exhibit 5D, p.4). The claimant had also worked as a C.N.A. from January 2004 to March 2004 inclusive for another employer (Exhibit 3E, p.3). The claimant thus worked all 12 months of 2004 and earned a total of $6,652 (rounded off) for 2004 or $554 per month which is below the presumptive level of substantial gainful activity of $810 in 2004.
>
> In January 2005, the claimant earned $1,288 (Exhibit 5D, p.4). Her earnings continued from K&C Providers until June 2005, inclusive, but after January 2005 they were well below the substantial gainful activity level. The claimant, however, began to work for Commonwealth of Nursing, evidently, in March 2005 (Exhibit 5D, p.5). As of August 2006, she still worked for Commonwealth of Nursing. The claimant's income varies significantly from month to month. Her monthly earnings are sometimes above the substantial

> gainful activity level and sometimes below. In July 2006, the last full month reported, the claimant earned only $533 (Exhibit 5D, p.5), which is below the substantial gainful activity level. In 2005, however, the claimant's income as per the F.I.C.A. report was $11,846 (Exhibit 3D, p.1). Including her work in 2005 for K&C Providers, the claimant worked all 12 months in 2005 and thus had average earnings of $987 per month or above the presumptive level of substantial gainful activity of $830 per month in 2005. The claimant's work activity in 2005 involved significant physical or mental activities for pay or profit. There are no allegations of any significant impairment related expenses that would significantly or at all reduce the claimant's earnings in 2005 to below the substantial gainful activity level.

(Tr. 21-22).

The plaintiff relies on 20 C.F.R. § 404.1574(c) of the Regulations, as support for her contention that her work activity, after she became disabled in April of 2004, constitutes a series of unsuccessful work attempts rather than substantial gainful activity. An unsuccessful work attempt is defined as an effort to work which was stopped or reduced after six months or less because of the individual's impairment such that her earnings fall below the SGA earnings level. SSR 05-02. The administrative record and plaintiff's own testimony demonstrate that she worked after her alleged onset date. Medical records from December 2005, show that Plaintiff went to the emergency room requesting a note to return to work. (Tr. 185-87). Based on her own testimony, she contends that the amount of time she worked depended on whether the agency called her to work, and/or whether she chose to accept the proposed assignment. (Tr. 237-38). Based on plaintiff's testimony, she cannot demonstrate that her attempt to work was involuntarily terminated or reduced below the presumptive level of SGA within six months because of her impairment.

Plaintiff's alternative argument that her work in 2004-2006 was part of a "trial work period" likewise fails. The Regulations define the term "trial work period" as:

14

> [A] period during which you may test your ability to work and still be considered disabled.... During this period, you may perform services ... in as many as 9 months, but these months do not have to be consecutive. We will not consider those services as showing that your disability has ended until you have performed services in at least 9 months. However, after the trial work period has ended we will consider the work you did during the trial work period in determining whether your disability ended at any time after the trial work period.

20 C.F.R. § 404.1592(a). *See also Lamblin v. Comm'r of Social Security*, 2004 WL 1765476, at *3 (E.D. Mich. July 19, 2004); *Reed v. Astrue*, 2008 WL 1902431, at *14 (W.D.N.Y. April 28, 2008). The trial work period begins with the month in which the claimant becomes entitled to benefits, and ends with the close of either the ninth month in which the claimant has performed services, or

> [t]he month in which new evidence, other than evidence relating to any work you did during the trial work period, shows that you are not disabled, even [*6] though you have not worked a full 9 months. We may find that your disability has ended at any time during the trial work period if the medical or other evidence shows that you are no longer disabled.

20 C.F.R. § 404.1592(e)(3). The trial work period is a nine-month period during which a person receiving DIB may attempt to work but still receive DIB. Because the ALJ never found Plaintiff eligible for DIB, plaintiff's argument lacks merit.

Based on the above, the ALJ concluded that Plaintiff was not disabled at Step One of the sequential evaluation process. The Court agrees. Consequently, the Court need not reach the ALJ's alternative findings and the errors alleged to be associated therewith. Where, as here, a plaintiff is found to have engaged in substantial gainful activity at Step One of the sequential evaluation process, the regulations direct a finding of "not disabled," regardless of the claimants medical condition. 20 C.F.R. §§ 416.972(a) & (b).

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this case be **DISMISSED** from the docket of this Court.

Date: 3/19/09

Timothy S. Hogan
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CARMEN LOCKHART,

    **Plaintiff**

vs

**Case No. 1:07-cv-837**
**(Beckwith, J.; Hogan, M.J.)**

COMMISSIONER OF
SOCIAL SECURITY,

    **Defendant**

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS REPORT & RECOMMENDATION

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation within **TEN (10) DAYS** of the filing date of this Report and Recommendation. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).